UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LOUIS SEAN BODWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:13CV00276 AGF |
| | ) | |
| UNKNOWN MUMFORD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter, filed under 42 U.S.C § 1983, is before the Court on the motion for summary judgment filed by Brenda Mallard, M.D., the one remaining Defendant in the action. Plaintiff Louis Sean Bodway claims that Dr. Mallard, the medical director of health care for inmates of the City of St. Louis, Missouri, violated Plaintiff's constitutional rights by her deliberate indifference to his serious medical needs. For the reasons set forth below, Dr. Mallard's motion for summary judgment shall be denied.

## **BACKGROUND**

The record establishes the following for purposes of the motion before the Court. On July 27, 2012, Plaintiff sustained second- and third-degree burns on 60 to 70 percent of his body, including his upper torso, shoulders, and hands. He received skin grafts and pins in some fingers, and on November 26, 2012, Michael Smock, M.D., performed surgery to release scar contractures in Plaintiff's shoulders and small fingers and thereby help with range of motion problems in his neck, shoulders, and hands. The surgery required a

1

multiple-day stay at the hospital as an inpatient, from where Plaintiff went to a nursing facility. Upon his discharge from the hospital, Dr. Smock recommended physical and occupational therapy. During a follow-up on December 21, 2012, Dr. Smock demonstrated stretching exercises which he recommended that Plaintiff do to help prevent more scar contractures from forming. Dr. Smock, who knew that Plaintiff had a history of narcotic drug abuse (heroin) and mental health issues (schizophrenic disorder), prescribed Neurontin 300mg three times a day for pain and nerve damage, Oxycodone 15mg every 3-6 hours as needed for pain, and Oxycodone CR 60mg one tablet every 12 hours for pain.

On January 10, 2013, Plaintiff was arrested at the nursing facility where he was receiving the pain medication as prescribed, and confined in the infirmary at the St. Louis County Criminal Justice Center. On February 3, 2013, he was transferred to the Criminal Justice Center ("CJC") for the City of St. Louis, and there came under the care of Dr. Mallard, an employee of the corporation that contracts with the City of St. Louis to provide medical care to its inmates. The pain medications that Plaintiff was provided while in the custody of St. Louis County were Morphine Sulphate ER 100mg twice a day, Morphine Sulfate ER, 15mg every 12 hours, Oxycodone 15mg every six hours as needed for breakthrough pain. This regimen provided Plaintiff with adequate pain relief. Upon his transfer to the CJC, Dr. Mallard ordered Vicodin three times a day for pain. On February 5, 2013, Plaintiff was transferred from the CJC to the City's Minimum Security Institution ("MSI").

It is not clear from the summary judgment record before the Court just how many doses of Vicodin Plaintiff received in the first days after his transfer to the City's custody.

2

Plaintiff attests by affidavit that during the first four or five days at MSI he was not administered any pain medication and suffered "excruciating" pain which he reported to MSI personnel, including at least one doctor. (Doc. No. 75-3.)

It is also not clear what Dr. Mallard knew about Plaintiff's condition and medications prior to February 6, 2013, when she examined him. She did know he had been taking Oxycodon and that he complained of significant pain. According to Plaintiff, he told Dr. Mumford that he needed physical therapy. Dr. Mumford testified by deposition that after conversing with Plaintiff on February 6, 2013, she believed that he had completed his course of physical therapy. She testified that she had observed that Plaintiff had the ability to function at MSI, and so determined that he did not require additional physical therapy.

Plaintiff initiated this action pro se on February 13, 2013. On March 15, 2013, Plaintiff, with the assistance of appointed counsel, filed a motion for a temporary restraining order ("TRO") seeking an order to compel Dr. Mallard to provide pain medications and physical or occupational therapy, in accordance with Dr. Smock's treatment plan. A hearing was held that day, at which Dr. Mallard testified that she had prescribed Plaintiff Neurontin in addition to the Vicodin on February 19, 2013, but that two days prior to the hearing she met with Plaintiff and found out that the order had never gone through, and so that night she initiated another order which would take about seven to ten days to process. She testified that at this meeting with Plaintiff, he seemed comfortable and did not complain of pain. Dr. Mumford testified by deposition that by February 6, 2013, she knew about Plaintiff's history of drug abuse and that her prescription was based on objective symptoms exhibited rather than on Plaintiff's requests and complaints. She testified at the hearing

3

that she could get a seven-day supply of Neurontin for Plaintiff to cover the interim until the re-order was processed, and she agreed to do so that day or the next morning.

The Court denied the TRO, except to the extent of ordering the expedited referral of Plaintiff to a plastic surgeon so that Plaintiff's need for physical therapy or surgery could be assessed as soon as possible. The Court stated that its decision was based on Dr. Mallard's testimony that, since her initial assessment of Plaintiff, there had been negative changes to his contraction condition, and on her commitment to provide Plaintiff with Neurontin that day or early the next day.

On March 18, 2013, Plaintiff filed an amended complaint seeking injunctive relief as well as damages for the pain and injury he sustained, claiming that Dr. Mallard violated his Eighth and Fourteenth Amendment rights by failing to provide him with therapeutic treatment and sufficient pain medication. On March 22, 2013, Plaintiff was taken to see Bruce A. Kraemer, M.D., who instructed that Plaintiff be given ibuprofen up to 2400mg daily, do stretching exercises, and be provided weekly therapy visits for advancing his upper extremity function. On May 9, 2013, Plaintiff was released from the custody of the City of St. Louis. The record is not clear as to what pain medications Plaintiff was provided after February 6, 2013, both before and after the TRO hearing.

On May 14, 2013, Plaintiff returned to Dr. Smock and complained that he was not given his pain medications and so could not continue his therapy. Plaintiff was advised to have further surgery due to new scar contractures. Dr. Smock told Plaintiff that nearly one year from the initial burn injury, Plaintiff should not be experiencing significant burn

wound pain, provided Plaintiff with "a small amount of pain medication," and referred him to a primary care physician for long term pain management.

Dr. Mallard argues that her course of treatment does not reflect deliberate disregard of Plaintiff's pain. Rather, based on her observations of Plaintiff's objective pain symptoms and her experience with painful injuries, and taking into account Plaintiff's drug abuse and "the risk of tolerance to narcotic pain medication," she believed that the pain medication she prescribed adequately addressed Plaintiff's pain. She argues that the record "unequivocally demonstrates that Plaintiff did not require pain medication of greater potency" than what she prescribed. She argues that Plaintiff's "mere disagreement" with her medical judgment regarding the appropriate quantity of pain medication does not constitute deliberate disregard of Plaintiff's medical needs. Dr. Mallard further argues that the record establishes that she did not act with deliberate indifference regarding Plaintiff's need for physical therapy.

In opposition to the motion for summary judgment, Plaintiff submits the May 1, 2013 sworn declaration of Dr. Smock, stating that the decrease in Plaintiff's pain medication from what he was receiving while in the custody of the County to Vicodin three times a day was "phenomenal," was not likely to have managed his pain (assuming his prior medications were appropriate for that purpose), and was "potentially risky from a narcotic withdrawal perspective." (Doc. No. 75-2 at 20-21.)

# DISCUSSION

## Summary Judgment Standard

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2) In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 610 (8th Cir. 2007).

To be a material fact, the factual issue must potentially "affect the outcome of the suit under the governing law." *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1094 (8th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "[T]he burden of demonstrating there are no genuine issues of material fact rests on the moving party," and the court must view "the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015).

**Deliberate Indifference Claim**

"It is well established that deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment." *Langford v. Norris*, 614 F.3d 445, 459 (8th Cir. 2010) (citation omitted). The deliberate indifference standard includes "both an objective and a subjective component: The plaintiff must demonstrate (1) that he suffered from objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citation omitted).

"Grossly incompetent or inadequate care can also constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment." *Langford*, 614 F.3d at 460 (citation omitted). "For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (citations omitted). A "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (citation omitted). On the other hand, "'mere proof of medical care' is insufficient to disprove deliberate indifference . . . . Thus, in cases where some medical care is provided, a plaintiff 'is entitled to prove his case by establishing [the] course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate

7

indifference.'" *Allard*, 779 F.3d at 772 (quoting *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)).

Here, Dr. Smock's May 1, 2013 declaration creates a factual question as to whether Dr. Mallard's initial reduction in Plaintiff's pain medications so deviated from professional standards that it amounted to deliberate indifference. Factual disputes as to just what pain medications Plaintiff was given throughout the time he was under Dr. Mallard's care, the level of pain sustained by Plaintiff during this time, and Dr. Mallard's knowledge of Plaintiff's treatment history before arriving at the CJC, and of his complaints of pain, all preclude granting summary judgment in favor of Dr. Mallard. Furthermore, it appears that Dr. Mallard may not have gathered or considered relevant information before discontinuing his prior pain medications and prescribing just Vicodin. *See Mace v. Johnson*, Civ. No. 11-0477 MJD/LIB, 2014 WL 538580, at *11 (D. Minn. Feb. 11, 2014) (denying a prison doctor's motion for summary judgment on a deliberate indifference claim where he decided to discontinue the plaintiff's OxyContin prescription, one of the plaintiff's three prescribed pain medications when he arrived at the prison, without gathering or considering relevant information). And she did not obtain a seven-day supply of Neurontin for Plaintiff, to cover the interim until the re-order was processed, immediately upon learning that the initial order did not go through, but rather only agreed to do so at the TRO hearing two days later.

Similarly, there are factual disputes surrounding Dr. Mallard's decision not to provide Plaintiff with physical or occupational therapy. The record suggests that Plaintiff's failure to perform the stretching exercises he was instructed to do by Dr. Smock resulted in further scar contractures, and that the two issues – the level of pain medication

and the lack of physical therapy – are related, as without adequate control of his pain Plaintiff may not have been able to do the exercises.

In sum, upon review of the record now before the Court, the Court concludes that taking the facts in the light most favorable to Plaintiff, a reasonable juror could find that Dr. Mallard was deliberately indifferent to Plaintiff's serious medical needs, at least for some duration of time, resulting in substantial pain and injury to Plaintiff. *See, e.g.*, *Bennett v. Miles*, No. 14-2124, 2015 WL 821069, at *1 (8th Cir. Feb. 27, 2015) (reversing the grant of summary judgment to prison doctors on an Eighth Amendment claim involving their failure to correctly diagnose the plaintiff's spinal problem, resulting in permanent damage, where there were conflicts between the doctors' declarations and the plaintiff's attestations regarding his symptoms and complaints, where assessments of outside doctors indicated a problem that needed immediate attention, and where evidence suggested that the problem could have been diagnosed earlier).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Defendant Brenda Mallard, M.D., for summary judgment is **DENIED**. (Doc. No. 67.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 8th day of May, 2015.